Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission modifies in part and adopts in part the Opinion and Award of the Deputy Commissioner.
***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. An employer-employee relationship existed between plaintiff and defendant-employer at all relevant times.
3. Zenith Insurance Company, formerly known as Riscorp, is the carrier on the risk.
4. The date of plaintiffs alleged injury by accident is 22 July 1997.
5. Plaintiffs medical records, 36 pp., have been submitted into evidence.
***********
 RULINGS ON EVIDENTIARY MATTERS
The Deputy Commissioner admitted the following items into evidence: (1) A Pretrial Agreement submitted by defendants; (2) Responses to questions from Dr. I. Reddix Collins.
***********
Based upon all of the competent evidence of record, the Full Commission modifies in part and adopts in part the findings of fact of the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a twenty-nine year old female with a high school education.
2. Plaintiff was hired by Nash General Health Care as an area technician in the Environmental Services Department on 14 July 1997. She was paid $5. 36 per hour and was hired as a probationary employee which meant plaintiff could be fired during the first ninety days of her employment for any reason.
3. On 22 July 1997, plaintiff sustained a compensable injury by accident arising out of and in the course of her employment. She sustained a chemical burn to her right upper arm as a result of contact with a quaternary detergent disinfectant called A-428-N. Plaintiff sprayed the disinfectant directly on a bed sheet. This act was contrary to hospital regulations but done in accordance with instructions given by plaintiffs co-worker and trainer.
4. Plaintiff reported to the Emergency Room at defendant-employers hospital on 23 July 1997, complaining of a burning and painful rash on her right upper arm. Plaintiff indicated she washed the chemical burn with alcohol. She was diagnosed with acute dermatitis, prescribed Motrin and directed to report to Employee Health if the problem worsened.
5. Plaintiff returned to Nash General Hospital Emergency Room on 25 July 1997 complaining of a 5 cm x 5 cm area of redness, warmth and tenderness on the right upper arm. The examiners impression was that plaintiff had an acute insect bite. Plaintiff was prescribed Benadryl. Plaintiff returned to work but left early with permission. Plaintiff was not scheduled to work the weekend days of 26 July and 27 July 1997.
6. Plaintiff reported to Dr. I. Reddix Collins of Rocky Mount, North Carolina on 29 July 1997. Dr. Collins diagnosed plaintiff with a chemical burn. Dr. Collins provided plaintiff with an out-of-work note authorizing her to be out of work from 29 July to 4 August 1997. Plaintiff called to report she was unable to come to work on 4 August 1997 because her daughter was sick. Plaintiff provided this out-of-work note to her employer on 5 August 1997, but learned that she had been terminated for unexcused absences under defendant-employers policy for five days of "no-call, no show; however, plaintiffs absences from 29 July to 4 August 1997 were due to her work-related injury and she had been taken out of work by her doctor.
7. On 5 September 1997, Dr. Collins released plaintiff to return to work on 8 September 1997 with restrictions including no further exposure to chemical A-428-N.
8. Plaintiffs termination was not due to her own misconduct. Although Dr. Collins released plaintiff to return to work on 4 August 1997, plaintiff was restricted from all heavy lifting for 2 weeks and from any further exposure to chemicals. The record does not reflect when or whether Dr. Collins took plaintiff out of work after 4 August 1997, but there is a note dated 5 September 1997 releasing plaintiff to return to work on 8 September 1997; however, plaintiff remained under the medical care of Dr. Collins beyond 8 September 1997. Based upon the evidence presented and reasonable inferences drawn therefrom, plaintiff was temporarily totally disabled from 29 July 1997 until 8 September 1997 as a result of her injury. Plaintiff did not make reasonable efforts to find suitable employment after 8 September 1997.
9. Plaintiffs treatment with Nash General Hospital including the visits of 23 July 1997 and 25 July 1997 were related to plaintiffs compensable injury. Plaintiffs office visits to Dr. Collins and the tests order by Dr. Collins including the bone scan and EMG/NCG were also related to plaintiffs compensable injury.
10. Dr. Collins responded to written questions presented to him regarding his treatment of plaintiff. According to Dr. Collins, a bone scan may be medically necessary for treatment and diagnosis of a chemical burn depending on the depth and the severity of the burn. Plaintiffs numbness, in Dr. Collins view, was "possibly caused by a chemical burn. He recommended nerve conduction studies to determine the etiology of plaintiffs numbness. Plaintiffs bone scan and nerve conduction studies were necessary diagnostic tests to determine the extent of the severity of plaintiffs chemical burn.
11. Plaintiff presented to Dr. Collins again on 17 March 1998. At that time, plaintiff complained of sharp pains running through her arms and legs. Dr. Collins diagnosed plaintiff with arthralgia and muscle aches. Plaintiffs treatment of 17 March 1998 with Dr. Collins was not related to her chemical burn.
12. Plaintiff next presented to Dr. Brusario Guarino at the Boyce-Willis Clinic on 11 March 1998. Plaintiff told Dr. Guarino that she was experiencing paresthesia and other complaints related to a chemical burn injury. There was no evidence of rash, redness or knot at that time. According to Dr. Guarino there might have been some radicular component to plaintiffs pain related to a cervical spine problem. Plaintiffs visits to Dr. Guarino were not related to her chemical burn.
13. Next, plaintiff presented to Dr. William E. Byrd of the Boice-Willis Clinic on 26 March 1998. Plaintiff did not discuss her chemical burn with Dr. Byrd during her visit and examination. Plaintiff indicated that her pain and discomfort in the right upper arm, forearm, thumb, and index finger were related to neck rotation and had existed since June 1997. Dr. Byrd recommended an MRI and nerve conduction studies. Plaintiffs MRI was normal. EMG/NCV studies performed 12 May 1998 of the right upper extremity were normal. Plaintiffs treatment with Dr. Byrd and the diagnostic testing she underwent as a result were not related to her chemical burn.
14. Plaintiff was temporarily totally disabled from work as a result of her chemical burn from 29 July 1997 until 8 September 1997 and is entitled to compensation during said period.
15. Dr. Collins has provided a patient ledger documenting the cost of the medical treatment incurred by plaintiff as a result of her chemical burn. This patient ledger has been entered into the record. According to the patient ledger, plaintiff incurred $145. 00 in medical expenses as a result of treatment with Dr. Collins for her chemical burn. Of this $145. 00 in medical expenses, plaintiff paid $95. 00 out of her own pocket by check or cash. Defendants are responsible for reimbursement to plaintiff of $95. 00 and payment of any and all unpaid or outstanding medical expenses to Dr. Collins related to his treatment of plaintiff and the bone scan and EMG/NCV tests he obtained for plaintiff.
16. Defendants are responsible for reimbursement to plaintiff for out-of-pocket medical expenses she paid at Nash General Hospital for treatment she received on 23 July 1997 or 25 July 1997. Defendants are also responsible for payment of medical expenses to Nash General Hospital for plaintiffs treatment on these dates.
17. Plaintiff earned wages of $5. 36 per hour, which computes to an average weekly wage of $214. 40 for a 40 hour work week. This yields a compensation rate of $142. 94 per week.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury by accident arising out of and in the course of her employment on 22 July 1997 when she sustained a chemical burn to the right upper arm. N.C. Gen. Stat.97-2(6).
2. Plaintiff was temporarily totally disabled from work from 29 July 1997 until 8 September 1997 as a result of her compensable injury and is therefore entitled to temporary total disability benefits pursuant to N.C. Gen. Stat. 97-29 during said period.
3. Defendants are responsible for payment of medical expenses related to plaintiffs treatment at Nash General Hospital on 23 July 1997 and 25 July 1997. N.C. Gen. Stat. 97-25.
4. Defendants are responsible for payment of medical expenses to Dr. I. Reddix Collins for treatment rendered to plaintiff, for reimbursing plaintiff for payments made to Dr. Collins out of plaintiffs own pocket in the amount of $95. 00 and for all diagnostic tests related to her compensable chemical burn. N.C. Gen. Stat. 97-25.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay to plaintiff temporary total disability compensation at the rate of $142. 94 per week from 29 July 1997 through 7 September 1997.
2. Defendants are responsible for all medical expenses related to plaintiffs compensable chemical burn as outlined in paragraphs 3 and 4 in the Conclusions of Law above.
3. Defendants shall pay the costs.
This the ___ day of June, 2000.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
S/_______________ RENÉE C. RIGGSBEE COMMISSIONER